IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| CHARLES EDWARD DAVIS, PRO SE, § <br> TDCJ-CID No. 1102008, § <br> Previous TDCJ-CID No. 480649, § <br> Previous TDCJ-CID No. 554991, § <br> Previous TDCJ-CID No. 291314, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> DONALD WINSCHEL, Facility Health § <br> Administrator; KELLE WALLACE, Facility § <br> Health Administrator; DAVID BASSE, § <br> Administration Physician; DR. NFN LACY, § <br> Staff Physician; and LEONARD COWDEN, § <br> Physician Assistant, § <br> § <br> Defendants. § | 2:11-CV-0190 |

**REPORT AND RECOMMENDATION**

Plaintiff CHARLES EDWARD DAVIS, acting pro se and while a prisoner confined in the Texas Department of Criminal Justice, Correctional Institutions Division, has filed suit pursuant to Title 42, United States Code, section 1983 complaining against the above-named defendants. Plaintiff has been granted permission to proceed in forma pauperis.

Plaintiff claims defendants Dr. BASSE and P.A. COWDEN exhibited deliberate indifference to his serious medical needs in their course of treatment and the remaining defendants did nothing to resolve plaintiff's problems when informed by letter of complaint or grievance.

By his Complaint, plaintiff requests the Court order that he be given surgery on his right hand and additional surgery on his left hand. Since filing suit, plaintiff received bilateral Carpal

Tunnel release surgery in December 2011. In addition to requesting surgeries, plaintiff has also requested he be awarded compensatory and punitive damages, as well as costs.

## JUDICIAL REVIEW

When a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity, the Court must evaluate the complaint and dismiss it without service of process, *Ali v. Higgs*, 892 F.2d 438, 440 (5th Cir. 1990), if it is frivolous[1], malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. 1915A; 28 U.S.C. 1915(e)(2). The same standards will support dismissal of a suit brought under any federal law by a prisoner confined in any jail, prison, or other correctional facility, where such suit concerns prison conditions. 42 U.S.C. 1997e(c)(1). A *Spears* hearing need not be conducted for every *pro se* complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991)[2].

The Magistrate Judge has reviewed the facts alleged by plaintiff to determine if his claim presents grounds for dismissal or should proceed to answer by defendants.

## SPEARS HEARING

On February 23, 2012, a hearing was conducted pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

Plaintiff was sworn and testified he was diagnosed with bilateral carpal tunnel syndrome in 2005. He said he received surgery in 2008 on his left hand, but not on his right. He said the

---

[1] A claim is frivolous if it lacks an arguable basis in law or in fact, *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989); *see also*, *Denton v. Hernandez*, 504 U.S. 25, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992).

[2] *Cf*, *Green v. McKaskle*, 788 F.2d 1116, 1120 (5th Cir. 1986) ("Of course, our discussion of *Spears* should not be interpreted to mean that all or even most prisoner claims require or deserve a *Spears* hearing. A district court should be able to dismiss as frivolous a significant number of prisoner suits on the complaint alone or the complaint together with the *Watson* questionnaire.").

surgery was not satisfactory and that he couldn't use his left hand.  Plaintiff states his muscles in his right hand have deteriorated since then as well.

Plaintiff testified he had spinal surgery on his neck in 2009, but began experiencing a lot of pain by December of 2009.  He said he was seeing P.A. COWDEN and Dr. BASSE during that time and complains that Dr. BASSE wouldn't refer him for an M.R.I.  Plaintiff stated he was not given an M.R.I. until April of 2011.  That M.R.I. showed plaintiff had a neck fracture, resulting in plaintiff having a second spinal surgery to his neck.  Plaintiff further complained that sometimes his pain prescriptions ran out and he didn't receive prompt refills.  He stated that he often couldn't sleep because of pain and muscle spasms.

Plaintiff testified he also had an M.R.I. of his lower back which showed the nerve roots were damaged at T5-T12.  Plaintiff said he received surgery in December of 2011 and is still on pain medication, Tramadol, 250 mg. three times a day.

Plaintiff stated he wants additional surgery on his left hand and surgery in his right hand.  He said there was throbbing and pain in his joints and numbness in two of his fingers.

Plaintiff stated he has never had a doctor tell him he needs a second surgery or, conversely, that it wouldn't do any good.

Plaintiff complained of his interactions with Dr. BASSE, saying that once he told Dr. BASSE he wanted more surgery on his left hand and Dr. BASSE wouldn't respond to that statement because plaintiff's appointment was for a routine physical.  Plaintiff said on another occasion, he saw Dr. BASSE and Dr. BASSE inquired whether plaintiff wanted a referral to the surgical specialist, Dr. Maxwell.  Plaintiff said that, on that occasion, plaintiff responded, "not at this time."  Plaintiff said he has complained without success that he wants surgery on his right

hand.

Doctor Leeah was sworn and testified that he is a doctor licensed to practice medicine in the State of Texas and has testified as a medical expert in federal courts in Texas. He stated he had reviewed and was familiar with plaintiff's medical records from 2005 through January of 2012.

Doctor Leeah testified plaintiff's records show plaintiff complained of nerve symptoms and was diagnosed with Carpal Tunnel Syndrome (CTS) in both hands. He had Carpal Tunnel release surgery on the left hand at the Montford unit in 2008. Subsequently, plaintiff didn't get much relief and doctors began to think the problem might be farther up the nerve pathway, such as in the upper arm or even the neck.

When plaintiff was evaluated further, it was discovered that he had experienced a gunshot wound in the neck sometime in the past, and bullet fragments remained near the spine. Also, at that time, plaintiff was diagnosed with degenerative disc disease, causing pain, paresthesia, and loss of function. Doctor Leeah stated plaintiff first received neck surgery at C3, C4, and C5 in 2009 because the nerves that control the diaphragm were located there and it was vital to the patient's survival. After that surgery plaintiff had a significant problem in his lower back.

In the summer of 2011, plaintiff received neck surgery at C5, C6, and C7, during which still more scarring was discovered. Doctor Leeah stated the scarring and the bullet fragments are complicating factors. Further, he stated, it was discovered that plaintiff suffers from a congenitally narrow spinal canal which, of itself, is a complicating factor. He said there is no effective treatment for the congenital problem except the laminectomy, fusions, and prosthetic

4

cage to prevent further collapse of the bone, which treatment plaintiff has received twice.

Doctor Leeah testified that, last fall, plaintiff also received a bilateral ulnar nerve relocation in treatment of his bilateral CTS.

In summary, Dr. Leeah testified, plaintiff has received (1) a left hand carpal tunnel surgery in October 2008; (2) a neck surgery at C3 and C4 in October of 2009; (3) a further neck surgery in summer of 2011; (4) a lower back surgery at L5-S1 in December of 2011; and a bilateral ulnar nerve relocation in December of 2011. Doctor Leeah testified the record showed there was a delay from the 2005 E.M.G. showing mild to moderate Carpal Tunnel Syndrome (CTS) to the 2008 surgery on plaintiff's left hand because the diagnosis of mild to moderate CTS was not indicative of a need for immediate surgery. In March of 2006 plaintiff complained of left arm pain and received conservative therapy with Naprosen. On June 26, 2007, plaintiff complained of numbness in his left hand. It was determined conservative treatment had failed and plaintiff had CT release surgery in October of 2008. Doctor Leeah testified that, if the neurological specialist, Dr. Maxwell, had recommended further surgery at that time, plaintiff would have received it.

Plaintiff stated his complaint had changed since he filed suit. He stated he "mainly disagrees" with the treatment he received from December of 2009, when he suffered severe lower back pain and had to walk around bent over for months because of that pain. Plaintiff said he sent in multiple I-60's and sick calls begging administrators for help and that Dr. BASSE and everyone else saw him walking around bent over. Plaintiff said it took Dr. BASSE too long to refer him back to the specialist, Dr. Maxwell.

Doctor Leeah testified plaintiff's medical records for 2010 show Dr. Maxwell knew of

5

plaintiff's lower back problems at T11 and T12, but that the focus of treatment was to first deal with plaintiff's neck issues and give plaintiff 6 months for healing before deciding what, if anything, should be done about any further problems. He stated that from the end of 2010 into 2011, plaintiff appeared to be doing well with pain management and had passes for a cervical collar and pain medications. Doctor Leeah testified that, whether plaintiff had been in the free world or in TDCJ, sufficient healing time would have to be observed before further surgery.

Doctor Leeah testified plaintiff's medical record showed that, in 2009, Dr. Maxwell felt the neck surgery would be the definitive surgery, and plaintiff was allowed to heal for 4-6 months. He said when plaintiff's complaints continued into the fall of 2010 and he had failed conservative care, it was clear something else was happening in his lower back. Dr. Leeah referred to plaintiff's medical record at Davis p.347 and pointed out that the specialist, Dr. Maxwell, determined plaintiff's lower back problems would have to wait until resolution of his neck problems. An M.R.I. was conducted in March of 2011 and, in April 2011, Dr. BASSE ordered an expedited referral to Dr. Maxwell. Doctor Leeah testified plaintiff's medical record showed that, from the time plaintiff was first referred to Dr. Maxwell to the present, Dr. BASSE abided by Dr. Maxwell's recommendations.

Doctor Leeah testified none of plaintiff's conditions was worsened by any delay in the his referral from 2009 until his March 2011 M.R.I. and April referral.

Plaintiff did not dispute the accuracy of his medical records or Dr. Leeah's testimony concerning their contents. He stated he felt that Dr. BASSE waited too long to refer him back to Dr. Maxwell and that he had suffered unnecessarily from that delay and from times when his pain medications ran out and it took several days to get them renewed.

6

## THE LAW AND ANALYSIS

Prison officials violate the Eighth Amendment prohibition against cruel and unusual punishment when they are deliberately indifferent to a prisoner's serious medical needs, as doing so constitutes unnecessary and wanton infliction of pain. *Davidson v. Texas Dep't of Criminal Justice,* 91 F.App'x 963, 964 (5th Cir.2004) (citing *Wilson v. Seiter,* 501 U.S. 294, 297, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)).

Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell,* 463 F.3d 339, 346 (5th Cir.2006) (quoting *Domino v. Texas Dep't of Criminal Justice,* 239 F.3d 752, 756 (5th Cir.2001)). The test for establishing deliberate indifference is "one of subjective recklessness as used in the criminal law." *Farmer v. Brennan,* 511 U.S. 825, 837, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). A prison official may not be held liable under this standard pursuant to section 1983 unless the plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer,* 511 U.S. at 838.

Plaintiff must show "prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any other similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Davidson,* 91 F. App'x at 965 (quoting *Domino,* 239 F.3d at 756). The Plaintiff is not entitled to the "best" medical treatment available. *McMahon v. Beard,* 583 F.2d 172, 174 (5th Cir.1978); *Irby v. Cole,* No. 4:03cv141-WHB-JCS, 2006 WL 2827551, at *7 (S.D.Miss. Sept.25, 2006). "Deliberate indifference exists wholly independent of an optimal standard of care." *Gobert v. Caldwell,* 463 F.3d 339, 349 (5th

Cir.2006). A prisoner's, or some other layperson's, disagreement with prison officials regarding medical treatment is insufficient to establish an unconstitutional denial of medical care. *Norton v. Dimanzana*, 122 F.3d 286, 292 (5th Cir. 1997). Further, negligent or erroneous medical treatment or judgment does not provide a basis for a section 1983 claim. *Graves v. Hampton,* 1 F.3d 315, 319 (5th Cir.1993).

A delay which does not aggravate or exacerbate the medical condition does not constitute a constitutional violation. *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988). A delay in medical care to a prisoner can constitute an Eighth Amendment violation only if there has been deliberate indifference, which results in substantial harm. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993).

Plaintiff does not allege nor does his medical record show that any delay by Dr. BASSE in referring plaintiff to Dr. Maxwell for his December 2009 through 2010 lower back pain worsened that or any other condition.

The uncontested facts contained in plaintiff's medical record show that any delay did not constitute deliberate indifference on the part of Dr. BASSE or Physician's Assistant COWDEN, as it was the result of a need to allow plaintiff to heal from his neck surgery before deciding whether and how to treat any further problems he had, including his lower back. Further, it was the neurological specialist, Dr. Maxwell, and not the named defendants, who determined what surgery should be performed, at what time, and in what order.

While it is clear plaintiff suffers from serious medical problems which are complicated by several factors, there has been no deliberate indifference to his serious medical needs. This is a case where there is no medical quick fix for plaintiff's condition, and surgery may only

8

complicate his problems further. Doctors are understandably cautious about surgery, since there is no guarantee its benefit will outweigh the risks to plaintiff. Plaintiff's disagreement with his physicians regarding medical treatment and its timing is insufficient to establish an unconstitutional denial of medical care. *Norton v. Dimanzana*, 122 F.3d 286, 292 (5th Cir. 1997).

Plaintiff wrongly perceives the Constitution as a micromanager of day-to-day prison activities, including medical care, and a guarantee of prisoner preferences over those of prison officials. It is clear that, not only has there been no deliberate indifference to plaintiff's medical needs, but the care he has received appears to have been quite good. He has been followed by his primary doctor and by his surgeon since at least 2005. He has been referred to a surgeon and has undergone five (5) surgeries to alleviate his condition and control his pain.

As to plaintiff's complaints that sometimes his pain medication ran out and was not renewed until after several days had passed, at most, this constitutes a claim of negligence, if even that. Negligent medical care will not support a claim under section 1983. *Mendoza v. Lynaugh*, 989 F.2d 191, 195 (5th Cir. 1993). Consequently, plaintiff's medical care claim lacks an arguable basis in law and is frivolous. *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

**CONCLUSION**

For the reasons set forth above and pursuant to Title 28, United States Code, sections 1915A and 1915(e)(2), as well as Title 42, United States Code, section 1997e(a), it is the RECOMMENDATION of the Magistrate Judge to the United States District Judge that the Civil Rights Complaint filed pursuant to Title 42, United States Code, section 1983, by plaintiff CHARLES EDWARD DAVIS be DISMISSED WITH PREJUDICE AS FRIVOLOUS AND

FOR FAILURE TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED.

INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 29th day of February, 2012.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

* **NOTICE OF RIGHT TO OBJECT** *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).